UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

JORDAN RIVER RESOURCES, INC.
*et al.*,

      Debtor.
_____/

PATRICIA MERKLE and JAY AND
PATTY MERKLE TRUST, a/k/a The
Jay V. and Patricia J. Merkle Living
Trust,

      Defendants-Appellants,

v

JORDAN RIVER LIQUIDATING
TRUST,

      Plaintiff-Appellee.
_____/

Case No. 1:11-cv-1132

HON. JANET T. NEFF

**OPINION**

      Defendant Patricia Merkle ("Defendant") appeals a decision of the Bankruptcy Court disallowing in part her asserted "Preferred Interests" in the consolidated debtor and related entities, and her corresponding entitlement to share in distributions under the Debtors' Consolidated Plan of Reorganization. *See Jordan River Liquidating Trust v. Jay & P, LLC (In re Jordan River Resources, Inc.)*, 455 B. R. 657 (Bankr. W.D. Mich. 2011). Having reviewed the record and fully considered

the parties' briefs, the Court affirms the decision of the Bankruptcy Court.[1]  *See* FED. R. BANKR. P. 8013.

## I.  Background

This appeal stems from an adversary proceeding (Adv. Pro. No. 09-80301, Case No. DL 07-01747) in which the Jordan River Liquidating Trust ("Plaintiff") objected to Preferred Interests asserted by Jay and Patricia Merkle, jointly, and the Jay V. and Patricia J. Merkle Living Trust (the "Merkel Trust") under a Consolidated Joint Plan of Reorganization (the "Plan") for four jointly-administered debtors in the bankruptcy court: Jordan River Resources, Inc., Apple Tree Resources, Inc., Redstone Energy Corporation, and Superior Petroleum Corporation (the "Debtors"), and thirteen related entities.[2 & 3]  Jay Merkle was a shareholder, member, officer, director and manager of the Debtors and related entities, and Defendant is his wife.

The Merkles, like many other interested parties, made investments in the Debtors and related entities, which Defendant claims came from the couple's joint funds, thereby entitling her assertions

---

[1] Having examined the briefs and record, the Court determines that oral argument is unnecessary because "the facts and legal arguments are adequately presented in the briefs and record and the decisional process would not be significantly aided by oral argument."  *See* FED. R. BANKR. P. 8012.

[2] Delaware River Resources, Inc.; New Star Properties, LLC; Huron Hydrocarbons, LLC; Shelf Exploration and Production LP; Shelf Exploration and Production GP, LLC; Midwest Diversified, LLC; Longhorn Energy Corporation; Petroleum Resource Group, LLC; OK Minerals, LLC; Peach Tree Petroleum, Inc.; Great Lakes Energy Company, LLC; Mesquite Oil & Gas, LLC; and Southwest Energy Resources, Inc.

[3] "Under the Plan, the term 'Preferred Interest' means, as to those Debtors or Related Entities that are corporations, the preferred stock of such corporations, and as to those that are limited liability companies, the units of preferred membership interests of such limited liability companies. Promissory notes held by a Longhorn Investor also qualify as 'Preferred Interests' but common stock interests do not.  Preferred Interests do not include the Common Interests in the Debtors or related entities" (Op. at 3 n.4 (citing Plan at § 1.66)).

of Preferred Interests. Jay Merkle, who was incarcerated in federal prison for his role in attracting investments in the Debtors, no longer sought payment, but Defendant sought her half of the couple's investments, whether held jointly with her husband, individually, or as a beneficiary under the Merkle Trust (Op. & Or., Dkt 1-5, [herein "Op."] at 6).

After a trial, the Bankruptcy Court issued a lengthy written opinion, setting forth in detail its findings and conclusions with respect to Defendant's assertions of Preferred Interests, upholding in part Plaintiff's objections to the Preferred Interests. The Bankruptcy Court allowed $106,855.40 in Preferred Interests but disallowed the remaining $353,632.37.[4] The holders of Allowed Preferred Interests receive a distribution under the Plan before holders of Allowed Common Interests (Op. at 5); Defendant thus contests the Bankruptcy Court's decision as to the disallowed Preferred Interests.

## II.  Legal Standards

On appeal to this Court from a bankruptcy court's final order or judgment, the bankruptcy court's conclusions of law are reviewed de novo while findings of fact are reviewed under the clear-error standard. *B-Line, LLC v. Wingerter (In re Wingerter),* 594 F.3d 931, 935-36 (6th Cir. 2010). "Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." FED. R. BANKR. P. 8013. "'[A] finding is 'clearly erroneous' when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Anderson v. Bessemer City,* 470

---

[4] Although the Bankruptcy Court's Opinion and Order states the Redstone Energy Investment Amount as $30,401.61 in the chart at the outset of the Opinion (Op. at 8), it appears this amount should be $39,401.61, which coincides with the amount set forth in Exhibit 38 and with Defendant's calculation of the total additional Preferred Interest sought on appeal (Dkt 10 at 25, 43).

U.S. 564, 573 (1985) (citation omitted). The district court may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings. FED. R. BANKR. P. 8013.

The decision on a motion in limine is an evidentiary ruling reviewed for an abuse of discretion. *Gen. Elec. Co. v. Joiner,* 522 U.S. 136, 141 (1997); *Sohail v. Singh (In re Sohail)*, 438 B.R. 398, 403 (E.D. Va. 2010). "An abuse of discretion occurs where the reviewing court has 'a definite and firm conviction that the court below committed a clear error of judgment.'" *In re Wingerter,* 594 F.3d at 936 (quoting *Barlow v. M.J. Waterman & Assocs., Inc.* (*In re M.J. Waterman & Assocs., Inc.)*, 227 F.3d 604, 607-08 (6th Cir. 2000) (citation, alterations, and internal quotation marks omitted)). "'The question is not how the reviewing court would have ruled, but rather whether a reasonable person could agree with the bankruptcy court's decision; if reasonable persons could differ as to the issue, then there is no abuse of discretion.'" *In re Wingerter,* 594 F.3d at 936 (quoting *Barlow*, 227 F.3d at 608).

### III. Analysis

At issue is whether the Bankruptcy Court erred in finding that Defendant and the Merkle Trust have Allowed Preferred Interests in the consolidated Debtor and related entities as follows:

| Investor | Entity | Allowed Preferred Interest |
|---|---|---:|
| Merkle Trust | Superior Petroleum | $103,654.60 |
| Merkle Trust | Redstone Energy | $3,200.80 |
| Jay and Ms. Merkle | Southwest Energy | $0.00 |
| Jay and Ms. Merkle | Longhorn Energy | $0.00 |
| Total | | $106,855.40 |

Defendant claims that she is entitled to additional Allowed Preferred Interests in the amount of $353,632.37 in the above or related entities. The Bankruptcy Court carefully considered the testimony and documentary evidence presented at trial under the terms of the Plan, and the circumstances of Defendant's investments, as an "insider" (Op. at 4). In a thorough and well-reasoned opinion, the Bankruptcy Court determined that these additional Preferred Interests were not supported by the evidence. This Court finds no basis for reversal.

"An Allowed Preferred Interest as defined in the Plan means a Preferred Interest for which a proof of preferred interest was timely and properly filed with the court by the bar date, or which is listed in the Investor Cash Investment Report (the 'Report') and not disputed" (Op. at 6). "The term also includes a previously Disputed Preferred Interest which the court has allowed" (*id.* (citing Plan at § 1.4)). Since Defendant's asserted Preferred Interests were disputed in the Report, and Plaintiff filed an objection, Defendant had the burden of establishing the validity and nature of her "Preferred Interest" pursuant to the Plan (Op. at 2, 6 (citing Plan at § 4.5(d) and Trl. Tr. at 5-6)).

A. Motion in Limine

Defendant argues that the Bankruptcy Court erred in denying her "motion in limine," in which she asserted that only the Original Objection of Plaintiff was timely filed under the Plan, and further, that her asserted Preferred Interests to which Plaintiff did not specifically object, totaling $164,264.73, must be automatically deemed "allowed" under the Plan. This Court finds no error.

Defendant asserts that the Plan set a deadline of April 1, 2009 for objections to Proofs of Preferred Interest, and although the Plan permits Plaintiff to unilaterally extend the deadline, Plaintiff failed to avail itself of that provision. She argues that the Bankruptcy Court had no discretion to consider the Amended Objection filed by Plaintiff on August 6, 2009. She more

specifically argues that because Plaintiff filed no objections to the Jay and Patricia Merkle jointly-filed Preferred Interests in Southwest Energy and Longhorn Energy totaling $164,264.73, they must be deemed "Allowed Preferred Interests" by default under the Plan.  Defendant argues that she should be awarded one-half of this amount (Def. Br., Dkt 10, at 27).

Plaintiff argues that the Bankruptcy Court did not abuse its discretion in denying what amounted to a tardy motion for summary judgment, disguised as a motion in limine, particularly when Defendant suffered no prejudice because she had full notice of the basis of Plaintiff's objections and conducted full discovery based on that notice.

The gist of Defendant's "motion in limine" was that no evidence should be permitted with respect to any Preferred Interest to which Plaintiff had not expressly and timely objected (Def. Br. at 10-11).  Thus, since only the Original Objection was timely, Plaintiff could introduce only evidence related to the objections therein.  Or, if the Bankruptcy Court permitted the Amended Objection, no evidence should be admitted with respect to the matters raised in the Original Objection, because Plaintiff failed to incorporate the Original Objection in the Amended Objection, and it therefore superseded, rather than supplemented, the Original Objection.  Moreover, no evidence should be admitted with respect to the $164,264.73 jointly-filed Preferred Interests because there was no challenge to these in either Plaintiff's Original or Amended Objection.

Having reviewed the April 27, 2011 transcript[5] of the hearing on the motion in limine, it is clear that despite the parties' varying perspectives on the proper form of Defendant's motion and the timeliness, the Court considered the dispositive issue to be one of notice and prejudice (*see* Tr. 4/27/11 at 7-9).  Counsel for Defendant admitted to the Bankruptcy Court that he was not surprised

---

[5]*See* Adv. Pro. No. 09-80301, Dkt 81.

6

by Plaintiff's objection to the jointly-filed Preferred Interests of Jay and Patty Merkle, including with respect to discovery (*id.* at 7-8). Counsel also admitted that out of an abundance of caution, he prepared for the objection, although he noted that that should not diminish the issue of the untimeliness (*id.* at 7-9).

In denying the motion in limine, the Bankruptcy Court stated that regardless of the nature of the motion, the procedural rules for amendments to the pleadings were applicable to the adversary proceeding, and amendment was contemplated, although the matter of timeliness was left open.[6] The Bankruptcy Court noted that nonetheless, counsel was "very candid in stating that [he] prepared as if both sets of interests were at issue" (the Jay and Patty proof of interest and the Jay and Patty Living Trust proof of interest). Additionally, the grounds for objection (lack of consideration and documentation) were ones that were referenced in the Pretrial Order and throughout discovery. The Bankruptcy Court concluded that the matter should have been raised earlier, by way of a dispositive motion rather than now as a motion in limine, and therefore denied the motion (*id.* at 19).

Given the Bankruptcy Court's considerations and reasoning, this Court finds no abuse of discretion in denial of the motion in limine. Defendant's procedural arguments do not justify relief in light of the varied and opposing concerns raised below.[7]

---

[6] It appears that the procedure below may have been complicated by the fact that Defendants proceeded *pro se* initially. The parties dispute whether the *pro se* filings were properly docketed as proofs of interest as opposed to claims (*see* Tr. 4/27/11 at 10, 16). The parties do not dispute, however, that the Bankruptcy Court entered a Pretrial Order permitting amended pleadings (*see id.* at 19).

[7] Moreover, the interests of the separate legal entities associated with Jay and Patty in part resulted from matters of estate planning and these interests were indistinguishable for purposes of the challenges raised (*id.* at 14-17).

7

Defendant additionally argues that the Bankruptcy Court erred in allowing Plaintiff "to contradict the admissions in [Plaintiff's accountant] Rhonda Karney's testimony and its discovery responses which it did not supplement or correct before trial" (Def. Br. at 27). Plaintiff responds that it fully complied with all discovery obligations, and even assuming *arguendo* that it did not, Defendant failed to raise the issue of discovery violations before the trial court, and therefore the issue is not properly considered on appeal. *See Dubuc v. Michigan Bd. of Law Examiners,* 342 F.3d 610, 619-20 (6th Cir. 2003). This court is not persuaded that Defendant properly and timely raised this issue below is questionable. In any event, Defendant's argument is without merit.

Defendant seeks relief from the Bankruptcy Court's substantive decision on the grounds that Plaintiff failed to supplement its discovery responses, which failure allegedly misled Defendant in her trial preparations. This argument is similar to the motion-in-limine argument and ignores the nature and timing of the proceedings below. Determining which of Defendant's asserted Preferred Interests should be allowed was difficult because of the insider nature of the financial dealings by Defendant's husband, and the proofs were complicated by his criminal proceedings, including the seizure of records and his incarceration. Although no fault is placed on Defendant, her financial interests are nevertheless derivative of her husband's transactions, and the burden of proof rests ultimately on her.

The Bankruptcy Court properly considered the merits of Defendant's asserted Preferred Interests on the basis of the relevant evidence, and Defendant's arguments for reversal on narrow procedural grounds must be rejected. This is particularly so under the circumstances of this case, given Jay Merkle's personal direction of the investments and the financial transactions, and the ubiquitous transfers amongst the related entities.

B. Preferred Interests

Defendant argues that the Bankruptcy Court erred in its determinations with respect to her Preferred Interests by failing to give her credit for (1) $33,000 that the Merkles invested in Redstone Energy; (2) $20,000 invested directly into Longhorn Energy Corporation; (3) a $600,000 investment ultimately booked in the name of Superior Petroleum; and (4) a $144,264.73 investment ultimately booked in the name of Southwest Energy Resources. Defendant's arguments are unpersuasive.

As Plaintiff notes, the Bankruptcy Court's findings were based on the books and records before it and were fully supported by the testimony and other evidence. The Bankruptcy Court properly considered the standards of proof and the evidence in making its findings of fact:

> The Plaintiff's accountant refused to assume that the Merkles' investments were properly characterized just because the Debtors' books reflected preferred interests on the petition date, even assuming the Texas Accountants reviewed the ledgers. *See* Tr. at p.195, lines 8-9. The special treatment accorded the Merkles' loan and common stock transactions and Jay's pervasive role in dictating the characterization of investments justified her skepticism. More generally, she concluded that if an investor (including the Merkles) invested money in an entity and there was no promissory note or subscription agreement, the Liquidating Trust would treat the investment as a purchase of common stock. Likewise, if a promissory note corresponded with a contribution, the Liquidating Trust would treat the transaction as a loan. Finally, if a party documented the investment with a contemporaneous subscription agreement and Cash, the transaction qualified as a purchase of preferred stock. Consequently, when at times she was unable to find subscription agreements for the Merkles in the various entities, she assumed their investments were in the nature of common stock and therefore, under the Plan not entitled to distribution until after full payment to holders of Preferred Interests. *See* Plan at § 4.8. The parties agree that there must be a signed subscription agreement in order for the court to allow a Preferred Interest. The court accepts Ms. Karney's testimony, assumptions, and methodology under the circumstances.
>
> The evidence showed that many of the Merkles' investments started as contributions to one entity, moved from one or more entities, and ultimately came to rest in the last entity in which Ms. Merkle now claims to hold a Preferred Interest. Ms. Merkle's investments took on various forms (common stock, loan, or preferred investment), each of which is discussed under the heading corresponding to the final entity in which Ms. Merkle claims an interest. In reviewing the record, the court is

> not concerned about the transfer of Ms. Merkle's supposed interests from one entity to another but is instead focused on the changing nature of the interests.

(Op. at 9-10 (footnote omitted)). Defendant has failed to show any clear error in the Bankruptcy Court's findings of fact. For the reasons that follow, Defendant's challenges on appeal are without merit.

### 1. Redstone Energy Corp. Investment

Defendant argues that the Bankruptcy Court's sole basis for excluding her asserted Redstone Energy Corp. Preferred Interest of $16,500 (her one-half interest) was because corresponding subscription agreements for the documented three checks were not introduced into evidence. Defendant contends this was an error of law because the Plan imposes no requirement for any particular documentation, such as subscription agreements.

The Bankruptcy Court stated at the outset of its findings that "[t]he parties agree that there must be a signed subscription agreement in order for the court to allow a Preferred Interest" (Op. at 10). The Bankruptcy Court noted that the Merkles' 2004 investment of $10,800 was accompanied by a contemporaneous subscription agreement. Defendant's additional asserted Preferred Interests in Redstone Energy were not supported by the requisite evidence. This Court finds no error.

### 2. Longhorn Energy Corp. Investment

Likewise, Defendant's asserted Preferred Interest of $10,000 (her one-half interest) in Longhorn Energy Corp. was documented by a check but no subscription agreement. The Bankruptcy Court properly found no evidence that the Merkles intended this investment to be anything but a purchase of common stock (Op. at 19). Defendant relies on a Confidential Member Application Form and the Texas accountants' booking of a preferred investment, along with Jay Merkle's testimony explaining the lack of a subscription agreement, as evidence the Longhorn

10

Energy investment was a Preferred Interest. However, the foundational requisites set forth by the Bankruptcy Court for Defendant to establish a Preferred Interest were reasonable, and this Court is not persuaded that the alternative circumstantial evidence cited by Defendant overcomes the lack of any clear, direct proofs.

### 3. Superior Petroleum Corp. Investment

Defendant argues that she is entitled to additional Preferred Interests of $255,000 (her one-half interest) related to Superior Petroleum Corp. She first contends that the Bankruptcy Court erred in disallowing her a Preferred Interest based on the Merkles' $500,000 loan to Delaware River Resources (DRR). This Court finds no error. The Bankruptcy Court carefully considered the circumstances surrounding this alleged preferred investment and properly concluded that, at most, Defendant proved she received a Preferred Interest in Superior Petroleum "on account of" a non-cash receivable loan to DRR (Op. at 15). The Court noted that Defendant "offered no explanation for how this payable qualifies as 'Cash' within the meaning of the Plan" or for that matter how the transaction changed from a loan to a Preferred Interest (*id.* at 15-16).

The Bankruptcy Court's conclusions are supported by ample evidence, including that the loan was recorded as a debt to Jay Merkle on DRR's books, at an annualized interest rate of 72%, for which he received three $30,000 interest payments; the loan was then transferred to Shelf Exploration (a company that had no investors) and was treated as a liability to Jay on Shelf's books; and then Jay caused the loan to be transferred to Superior Petroleum and at the same time somehow converted it into a preferred investment in the name of the Merkle Trust (Op. at 14). The Bankruptcy Court correctly found no evidence supporting a Preferred Interest with respect to the $500,000 loan.

Defendant argues in the alternative, that if this Court agrees with the Bankruptcy Court that the $500,000 loaned to DRR could not be transformed into a preferred investment, then the Court must recognize that as a Claim, with Defendant being entitled a Claim for one-half of that amount or $250,000.

This Court finds no basis in the record for an alternative award on appeal of $250,000 to Defendant on the basis of an Allowed Claim for her half of the $500,000 loan. Defendant cites no foundational support in the lower record for this alternative relief, nor does the Bankruptcy Court's Opinion include a consideration of this alternative. This Court declines to make an alternative award for an Allowed Claim in the first instance.

Defendant next argues that the Bankruptcy Court erred in giving credit for $100,000 originally loaned to Snake River Resources (SRR). The Bankruptcy Court found that this second component of Defendant's asserted Preferred Interest in Superior Petroleum should be disallowed for the essentially the same reasons that the DRR $500,000 loan was disallowed: this interest originated as a loan to SRR; there was no subscription agreement to evidence an equity investment; and without explanation, the loan was transferred to Superior Petroleum and placed on the books as a preferred investment in favor of the Merkle Trust with a subscription agreement but no check or other "Cash" within the meaning of the Plan (Op. at 16). This Court is not persuaded by Defendant's argument that the net effect is the same even if the loan was simply unilaterally transformed into a Preferred Interest since Defendant would have a right to be paid in full on her Claim. The issue before the Bankruptcy Court and this Court is whether Defendant has carried her burden of proving a Preferred Interest based on the requisite foundational documentation. She has not.

4.  Southwest Energy Resources, Inc. Investment

Defendant finally argues that the Bankruptcy Court erred in failing to give credit for the Merkles' $144,264.73 investment ultimately booked in the name of Southwest Energy Resources, Inc., which would have entitled Defendant to a Preferred Interest of $72,132.37.  This Court finds no error.

The Bankruptcy Court noted the convoluted shuffling of the investments at issue:  "The transaction began as a loan derived from money invested at least in part by an unrelated entity, was re-labeled as a preferred investment almost a year after money changed hands, and remains unsubstantiated by the presence of a check, Cash, or even Ms. Merkle's direct knowledge" (Op. at 19).  Defendant's reliance on Jay Merkle's explanation of the course of the investments, and a presumption that the transformation on the Southwest Energy books to a preferred investment was legitimate, is insufficient to overcome the deficiencies in the proofs cited by the Bankruptcy Court.

IV.  Conclusion

The Bankruptcy Court properly concluded that the asserted Preferred Interests should be disallowed.  As an insider, Defendant's proofs of Preferred Interests warranted closer scrutiny, and Defendant failed to meet her burden of proof with respect to the disallowed Preferred Interests.  The Bankruptcy Court's decision is affirmed.

An Order consistent with this Opinion will be entered.


Date: September 11, 2012                              /s/ Janet T. Neff
                                                      JANET T. NEFF
                                                      United States District Judge